UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANGELA EVERETT GOLDEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:18-cv-00609-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION[1]

Plaintiff Angela Everett Golden ("Golden") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[2] (Doc. 1). Golden timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Golden protectively filed applications for a period of disability, DIB, and SSI on June 22, 2016, alleging disability beginning on June 15, 2016. (Tr. 136-148). The Commissioner initially denied Golden's claim, (tr. 66-75), and Golden requested a hearing before an ALJ, (tr. 78-79).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

[2] The judicial review provisions for DIB claims, 42 U.S.C. § 405(g), apply to claims for SSI. *See* 42 U.S.C. § 1383(c)(3).

After an August 2, 2017 hearing, (tr. 31-49), the ALJ denied Golden's claim on October 5, 2017. (Tr. 14-30). Golden sought review by the Appeals Council, but it denied her request for review on February 13, 2018. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On April 17, 2018, Golden initiated this action. (Doc. 1).

Golden was forty-seven years old on the date the ALJ rendered her decision. (Tr. 24, 35). Golden has past relevant work as an office manager and a waitress. (Tr. 36-37, 46).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[3] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

3

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Golden had not engaged in substantial gainful activity since June 15, 2016, the alleged onset date of her disability. (Tr. 20). At Step Two, the ALJ found Golden has the following severe impairments: psychogenic left-sided weakness and numbness, pseudo seizures, and migraine headaches. (*Id.*). At Step Three, the ALJ found Golden does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Before proceeding to Step Four, the ALJ determined Golden's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Golden has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can [sic] lift/push/pull 10 pounds occasionally; sit for 6 hours, stand and walk for 2 hours; use the left hand on only a frequent basis for fingering/feeling/handling; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolding; occasionallybalance/stoop/kneel/crawl/crouch;

4

avoid all work at unprotected heights and with moving mechanical parts; and restricted to simple/routine tasks.

(Tr. 21). At Step Four, the ALJ determined Golden could not perform any relevant past work. (Tr. 24). At Step Five, the ALJ determined, based on Golden's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Golden could perform. (Tr. 24). Therefore, the ALJ determined Golden has not been under a disability and denied her claim. (Tr. 25-26).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Golden raises two objections to the denial of her claims. First, she contends the ALJ used the wrong standard for evaluating her subjective complaints. (Doc. 10 at 9-15). Second, she argues the denial was not based on substantial evidence because the ALJ posed an inaccurate and incomplete hypothetical to the vocational examiner. (*Id.* at 15-19).

### A. The ALJ Appropriately Evaluated Golden's Subjective Complaints

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition

5

and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029 at * 3-10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p, 2016 WL 1119029 at * 3-10. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*,

431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, the ALJ articulated the appropriate standard, (tr. 21-22), and then listed Golden's subjective complaints:

> [Golden] testified she cannot hold things in her left hand for very long, cannot lift her left hand as high as her right, and has less strength in her left hand and left leg than on the right side. She also stated that she has trouble twisting a doorknob with her left hand, and that standing for a long period of time or lifting her left leg high is difficult. [Golden] reported that she is on medication for seizures, but that they do not control them. She testified that she has migraines once or twice a week that last at least 24 hours, and that she does not take prescribed medication for her headaches. She reported that her medications make her sleepy and groggy such that it is hard to think clearly. She also testified that she has memory issues, and difficulty recalling words to use.

(Tr. 22). Following this, the ALJ stated: "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22). The ALJ then indicated that Golden's statements regarding her subjective symptoms "have been found to affect [her] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (*Id.*).

Golden argues the ALJ used the wrong standard, (doc. 10 at 10), but the ALJ's formulation tracks the Eleventh Circuit's pain standard. The ALJ clearly determined that "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain" before moving on to assessing how Golden's description of her symptoms squares with the record evidence. Although Golden contends this is "vague, general boilerplate

7

language" and that the ALJ "did not specify which medical evidence was not consistent with claimant's testimony," (doc. 10 at 10), this ignores the next two paragraphs, which clearly connect Golden's testimony to evidence in the record.[5]

In the immediately-following paragraph, the ALJ noted that Golden had presented to the emergency department at South Baldwin Regional Medical Center in June 2016 with symptoms of possible stroke, but that no apparent signs or symptoms of stroke were observed. (Tr. 22). Dr. Mark Cameron had determined there were no risk factors for stroke or transient ischemic attack, and that Golden did not meet tPA stroke guidelines due to contraindications. (*Id.*). Golden was transferred to Sacred Heart Hospital, where Dr. Lawrence King, III noted she had considerable inconsistencies on examination, leading him to conclude that the episode could have been psychogenic. (*Id.*). Tests, including a CT scan and an MRI, revealed no structural issue, hemorrhage, or infarction. (*Id.*). The ALJ's synopsis of these medical records is accurate. (Tr. 272-300).

In the next paragraph, the ALJ describes Golden's late 2016 encounters—again, consistent with the records she cites. (Tr. 23). Golden had presented to the Riverview Regional Medical Center emergency room on September 21, 2016 complaining of a headache and weakness. (Tr. 23, 534). Dr. Radwan Mallah noted old weakness on Golden's left arm, left side, and left leg. (Tr. 23, 535). Golden again underwent a CT scan with unremarkable results. (Tr. 23, 537). The ALJ

---

[5] Golden also accuses the ALJ of "fail[ing] to discuss Claimant's long history of treatment for anxiety and depression," (doc. 10 at 10), but it is unclear how Golden connects this to the ALJ's analysis of her subjective complaints. In any event, the ALJ found these impairments medically determinable but nonsevere at Step Two, following the regulations for evaluating mental disorders. (Tr. 20). Golden's one-sentence reference to the ALJ's alleged failure to "discuss" anxiety and depression in connection with her analysis of Golden's subjective reports of pain is not a developed challenge to the ALJ's finding at Step Two that the conditions are nonsevere.

also noted a September 2016 examination contained the following comment from CRNP Phillip Rogers: "During the exam she was holding her left arm down on her left leg. She had little use strenght [sic] was Left arm/leg 3/5 on exam. Then at the end of the visit she reached into her bag attached to her walker and pulled out a folded piece of paper using both hand [sic] she unfolded it and handed it to me with her left hand using her left arm and hand without difficulty." (Tr. 23, 652). October and November 2016 return visits showed Golden's seizures to be poorly controlled and that she had not followed up with the Kirklin Clinic. (Tr. 23, 556, 563). Another CT scan in October 2016 did not reveal any acute intracranial abnormalities, and an ECG showed sinus rhythm (i.e., a normal heartbeat). (Tr. 23, 583-85). Golden was also non-compliant with her seizure medication. (Tr. 23, 674). Based on this, the ALJ concluded "[t]he test results included in the medical record, and the treatment notes from treating sources during the period at issue indicate that the claimant's symptoms and resulting limitations are not as great as alleged." (Tr. 23).

The keystone of Golden's argument is SSR 16-3p, in which the Social Security Administration eliminated the use of the term "credibility" in assessing complaints of pain, effective March 28, 2016.[6] (Doc. 10- at 9-10). Specifically, the regulation states:

> [W]e are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation.
>
> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically

---

[6] Golden's reference to *Adaire v. Colvin*, 778 F.3d 685 (7th Cir. 2015) as a case "explaining SSR 16-3p," (doc. 10 at 12), is puzzling given that the case (which is not binding on this court in any event) was decided over a year before SSR 16-3p's effective date.

> determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult and how symptoms limit ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim.

SSR 16-3P, 2016 WL 1119029 at *1-2.

Without any explanation, Golden states that refusing to accept her testimony "is more an assessment of the Claimant's overall character or truthfulness which SSR 16-3p precludes." (Doc. 10 at 11). Golden then recaps her testimony. (*Id.* at 12-15). But there is no indication that the ALJ made any character- or truthfulness-based judgments about Golden herself. Instead, the ALJ found Golden's testimony was inconsistent with the "objective medical and other evidence," (tr. 22), which she is required to do under SSR 16-3p's mandate to "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029 at *2. As stated above, the ALJ analyzed both objective test results and other evidence in the record to determine the extent to which Golden's reports regarding the "intensity, persistence, and limiting effects" of her symptoms bears on her ability to work. Golden's argument that the ALJ assessed her character rather than the evidence in the record is misplaced when (1) the ALJ precisely tracked SSR 16-3p's language and correctly applied both the regulation and the Eleventh Circuit's pain standard, (2) the ALJ made no apparent references to Golden's character or truthfulness, and (3) still accepted that Golden had some level of restriction in the use of her left hand and imposed limitations in her RFC based on that. The ALJ did not err in her assessment of Golden's subjective complaints, and her finding was supported by substantial evidence.

## B. The ALJ's Question to the Vocational Examiner Was Not Erroneous

Golden's second and final argument is that the ALJ erroneously relied on the testimony of the vocational examiner ("VE") because the ALJ asked an "inaccurate and incomplete hypothetical question," (doc. 10 at 15). Specifically, the ALJ asked the VE the following question:

> I would like for you to consider a hypothetical individual of similar age, education, and prior work history as the claimant. I would like for you to consider that this individual can lift 10 lbs. occasionally and can sit six hours, can stand for two hours, walk for two hours, push and pull as much as lift and carry. This hypothetical individual has manipulative limitations resulting in the ability to only use the left hand on a frequent basis for fingering, feeling, and handling. This hypothetical individual could occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolding; can occasionally balance, stoop, kneel, crouch, and crawl. The individual, the individual should avoid all work at unprotected heights and with moving mechanical parts. And the individual would have a restriction to simple and routine tasks. Given that hypothetical, would there be any jobs available, first from the prior, and then from any other work?

(Tr. 46-47). The VE then responded with a series of jobs such a hypothetical person could perform, which the ALJ incorporated into her decision. (Tr. 24, 47).

In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Here, Golden claims that the ALJ's hypothetical "did not include the limitations and restrictions caused by the severe impairments found by the ALJ . . . psychogenic left-sided weakness and numbness; pseudo seizures; and migraine headaches." (Doc. 10 at 16). Golden does not identify any specific limitation that should have been included in the hypothetical. Further, the hypothetical includes both physical restrictions (i.e., the manipulative limitations relating to her Golden's left hand and postural limitations) and mental restrictions (i.e., limiting Golden to simple and routine tasks). To the extent Golden believes the ALJ should have posed more restrictions based on her subjective reports, that argument is meritless. As discussed above,

11

the ALJ assessed Golden's pain testimony in compliance with the regulations and the law of this circuit and considered "all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments," (tr. 21). *See Nichols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 797 (11th Cir. 2017) (ALJ's explicit statements that he considered the record and impairments in combination supported that he had did so). The ALJ was not required to include limitations she found to be unsupported. *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Accordingly, the VE's testimony was substantial evidence supporting the ALJ's RFC.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Golden's claim for a period of disability, DIB, and SSI is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 30th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE